STEVEN G. KALAR
Federal Public Defender
Northern District of California
HANNI M. FAKHOURY
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone: (510) 637-3500
Facsimile: (510) 637-3507
Email: Hanni_Fakhoury@fd.org

Attorneys for Kevin Stevenson

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEVIN STEVENSON,<br><br>Defendant. | **Case No.:** CR 18-187-JSW<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>**Hearing Date:** January 28, 2020<br>**Hearing Time:** 1:00 p.m. |

**INTRODUCTION**

Mr. Stevenson appears before the Court for sentencing, after pleading guilty to brandishing a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). As the probation officer notes in the final Presentence Investigation Report ("PSR"), "Mr. Stevenson has a long history of mental health and substance abuse" problems, which directly contributed to the commission of this offense. PSR ¶ 77. Given that history, Mr. Stevenson asks this Court to accept the Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement negotiated by the parties and sentence him to 96 months in the Bureau of Prisons ("BOP"), five years of supervised release and a $100 special assessment.

**STATEMENT OF FACTS**

**A.     Mr. Stevenson's History and Characteristics.**

Mr. Stevenson was born in Oakland in 1984. PSR ¶ 34. He did not have a good childhood. His father was a drug addict and alcoholic, who was physically abusive to Mr. Stevenson's mother. PSR ¶ 36. Mr. Stevenson's mother had mental health difficulties and was physically abusive towards Mr. Stevenson, hitting "him and his siblings with broomsticks and extension cords as a form of discipline," and telling Mr. Stevenson hurtful things like "I don't love you" and "I should have aborted you." PSR ¶ 37. His family was poor and lived off of food stamps. PSR ¶ 35. Child Protective Services ("CPS") often came to his house to take Mr. Stevenson and his brother out of the home and away from their mother. PSR ¶ 37. But she would come to take Mr. Stevenson back after a few days and the abuse would continue.

Such a chaotic childhood made school impossible for Mr. Stevenson. He was in special education classes, repeated the 7th grade and ultimately dropped out of school altogether in the 9th grade. PSR ¶¶ 51, 54. He was bullied for being poor and would act out in order to get suspended on purpose so he would not have to go to school. PSR ¶ 52. Mr. Stevenson never worked and received supplemental security income ("SSI") due to his mental disabilities.

Predictably, Mr. Stevenson turned to alcohol and drugs to cope with this trauma. Beginning at the age of 15, he would drink cognac and smoke marijuana every day. PSR ¶ 48. That in turn led to encounters with the police and ultimately the criminal justice system. His first arrest came at 16

1  years old for selling drugs. PSR ¶ 24. When he was 22 years old, he was convicted of robbery in
2  state court and sentenced to five years in state prison. PSR ¶ 19. While in California state prison, he
3  was diagnosed with major depression and prescribed the anti-psychotic medication Risperidone after
4  he told prison staff that he heard voices tell him to hurt himself. PSR ¶¶ 43, 45.

Shortly after he was released from prison, he began abusing methamphetamine. PSR ¶ 49. He used the drug every day from the age of 28, until his arrest six years later. PSR ¶ 49. The methamphetamine abuse, coupled with his mental health difficulties, led to the mistake in January 2018 that will send him to prison for years to come.

**B.     The Nature and Circumstances of the Offense.**

On January 18, 2018, Mr. Stevenson walked into the East West Bank in downtown Oakland. Mr. Stevenson climbed over a desk and pointing an unloaded revolver, demanded money from the vault. He was given approximately $302,462 in cash and fled the bank. Within minutes, he was stopped by BART police officers at gun point near the Lake Merritt BART station. He followed all of their commands, stopped moving, lay down on the ground and was taken into custody without incident. A duffel bag containing cash and the unloaded revolver were found inside his jacket. PSR ¶¶ 6-11.

**C.     Court Proceedings.**

Mr. Stevenson was initially charged in state court following his arrest. On May 3, 2018, a three count indictment was filed in this Court, charging Mr. Stevenson with armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See* Dkt. 1; PSR ¶ 1. Mr. Stevenson made his initial appearance in federal court on June 14, 2018. *See* Dkt. 3, PSR ¶ 4. He has remained in custody since his arrest two years ago, on January 18, 2018.

Mr. Stevenson filed a motion to suppress, which was denied on December 10, 2018. *See* Dkt. 32. The parties attempted to resolve the case through a stipulated facts bench trial, which would have preserved Mr. Stevenson's ability to appeal the denial of the suppression motion. *See* Dkt. 34, 41. But on March 6, 2019, defense counsel filed a motion for a competency evaluation, which this Court

1  granted on March 18, 2019.  *See* Dkt. 46, 49.  Mr. Stevenson was sent to the Los Angeles
2  Metropolitan Detention Center for the evaluation.  On July 2, 2019, a BOP forensic evaluator found
3  Mr. Stevenson competent to stand trial, a conclusion ultimately adopted by this Court without
4  objection by either side.  *See* Dkt. 64; PSR ¶ 44.

5  After Mr. Stevenson returned to the Northern District, the parties quickly entered into a Federal
6  Rule of Criminal Procedure 11(c)(1)(C) plea agreement, with Mr. Stevenson agreeing to plead guilty
7  to count two of the indictment, charging him with brandishing a firearm in furtherance of a crime of
8  violence.  Mr. Stevenson agreed to waive his right to appeal, including the denial of his suppression
9  motion, and agreed to an expanded search condition.  In exchange, the government agreed to jointly
10  recommend a sentence of 96 months custody and dismiss the remaining counts of the indictment.
11  PSR ¶ 3.  Mr. Stevenson pleaded guilty before the Court on October 1, 2019.  *See* Dkt. 66; PSR ¶ 2.

12  **D.     Mr. Stevenson's Future Goals and Plans.**

13  Mr. Stevenson obviously needs help maintaining sobriety and managing his mental health.
14  Tackling both of these demons will be the only way he can achieve a successful life free from the
15  confines of prison.  He looks forward to working with the Probation Office while on supervised
16  release to help confront his issues head on.

17  **ARGUMENT**

18  Criminal "punishment should fit the offender and not merely the crime."  *Williams v. New*
19  *York*, 337 U.S. 241, 247 (1949).  That requires "the sentencing judge to consider every convicted
20  person as an individual and every case as a unique study in the human failings that sometimes
21  mitigate, sometimes magnify, the crime and the punishment to ensue."  *Gall v. United States*, 552
22  U.S. 38, 52 (2007) (quotations omitted).  The factors detailed in 18 U.S.C. § 3553 (a) assist the Court
23  in fulfilling this mandate to make "an individualized assessment of a particular defendant's
24  culpability rather than a mechanistic application of a given sentence to a given category of crime."
25  *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985).  The sentence recommended in the U.S.
26  Sentencing Guidelines ("U.S.S.G.") is only one factor for district courts to consider in making this
27  judgment, and it may not be weighed more heavily than any other § 3553(a) factor.  *Gall*, 552 U.S. at
28  50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).

The joint sentencing recommendation of 96 months of custody, five years of supervised release and a $100 special assessment furthers all of the sentencing goals detailed in § 3553(a).

**A.     Seriousness of the Offense, Respect for the Law and Just Punishment.**

The Supreme Court has explained the factors in § 3553 (a)(2)(A)—the seriousness of the offense," the need "to promote respect for the law" and "provide just punishment for the offense"— are the sentencing rationale of "retribution." *See Tapia v. United States*, 564 U.S. 319, 326 (2011) ("a court may not take account of retribution (the first purpose listed in 3553(a)(2)) when imposing a term of supervised release") (emphasis omitted). "The goal of retribution" is the "interest[] in seeing that the offender is repaid for the hurt he caused." *Kennedy v. Louisiana*, 554 U.S. 407, 442 (2008). Yet, the Supreme Court has warned "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quotations omitted).

The "real conduct and circumstances" here support the parties' joint recommendation of 96 months of custody. There is no question that Mr. Stevenson made a significant mistake in this case that requires punishment. Mr. Stevenson is prepared to accept that punishment and knows he will be sent to federal prison. At the same time, however, "the real conduct and circumstances" must also take into account that Mr. Stevenson's traumatic upbringing, struggle with drug addiction and mental health difficulties played a role in bringing him before the Court for sentencing. It is well known that methamphetamine "increases the amount of the natural chemical dopamine in the brain. Dopamine is involved in body movement, motivation, and reinforcement of rewarding behaviors." Long term, chronic use of methamphetamine "alter[s] judgment and decision-making leading to risky behaviors," and leads to "changes in brain structure and function."[1] There is thus a clear link between Mr. Stevenson's drug abuse, and his foolish actions that bring him before the Court awaiting sentencing.

Moreover, Mr. Stevenson's chaotic childhood also played an important role in landing Mr. Stevenson in federal court. Trauma during childhood creates higher risks for negative outcomes in

---

[1] National Institute on Drug Abuse, "Drug Facts: Methamphetamine," *available at* https://www.drugabuse.gov/publications/drugfacts/methamphetamine.

DEFENDANT'S SENTENCING MEMORANDUM
*STEVENSON*, CR 18-187-JSW

4

life, including health and life opportunities. *See* Rhitu Chatterjee, "CDC: Childhood Trauma is a Public Heath Issue and We Can Do More to Prevent It," *National Public Radio*, Nov., 2019.[2] Supportive and nurturing relationships and environments for children and families are at the "heart of prevention" for children with trauma history. *Id.* In his parents' home, Mr. Stevenson certainly did not receive this level of nurturing care. His father abused drugs and was physically abusive to his mother. Mr. Stevenson's mother suffered from mood disorders, hit Mr. Stevenson with broomsticks and extension cords, and would yell "I don't love you" to him. PSR ¶ 37.

As a result of his abusive upbringing, Mr. Stevenson was unable to live any semblance of a normal life. He was in special needs classes until he dropped out of school altogether in the 9th grade. PSR ¶¶ 51; 54. He suffers from significant mental health difficulties in life and has been prescribed heavy anti-psychotic medications. PSR ¶¶ 41, 45. He abused drugs, including heavy use of methamphetamine until the time of his arrest. PSR ¶ 48.

There can be no question that Mr. Stevenson's mental health conditions, caused by his traumatic past and exacerbated by drug abuse, contributed to his poor judgment in this case. As a recent article in the *New York Times* noted,

> …in a justice system built upon the idea of choice and personal responsibility, experts say the path to trouble may begin long before an individual has any say in the matter. What happens to people in childhood can make a difference in whether they end up in a prison cell, or whether they are even wired to make rational decisions.

Audra Burch, "A Gun to His Head as a Child. In Prison as an Adult." *New York Times*, Oct. 15, 2017.[3] Unfortunately, childhood trauma does not have an expiration date. Indeed, as one Cornell University sociologist told the *New York Times,* trauma is a major factor "that shapes addictive and criminal behavior in adulthood" and is a "huge factor within the criminal justice system." Burch, "A Gun to His Head as a Child. In Prison as an Adult." *New York Times*. As a doctor with the Centers for Disease Control told the *New York Times*, "children's adverse experiences are a public health problem" as "childhood adversity and stress can chemically change the way our brains work." *Id.*

---

[2] *Available at* https://www.npr.org/sections/health-shots/2019/11/05/776550377/cdc-childhood-trauma-is-a-public-health-issue-and-we-can-do-more-prevent-it.

[3] *Available at* https://www.nytimes.com/2017/10/15/us/childhood-trauma-prison-addiction.html.

DEFENDANT'S SENTENCING MEMORANDUM
*STEVENSON*, CR 18-187-JSW

5

1    Thus, Mr. Stevenson's drug abuse and childhood trauma shaped his adulthood and continues to
2    impact him every day of his life.  While Mr. Stevenson accepts responsibility for the mistakes that he
3    alone caused, a 96 month sentence takes both the aggravating and mitigating circumstances of this
4    case and his life into account.

5    **B.    The Need to Deter Criminal Conduct and Protect the Public.**

6    A 96 month sentence is a severe sentence, significantly longer than the only other previous
7    custodial sentence he has served, that will deter him and others from engaging in similar criminal
8    conduct.  *See* PSR ¶ 19.  As for protecting the public, getting Mr. Stevenson on supervised release
9    and into intensive drug and mental health treatment sooner rather than later will be more effective at
10   protecting the public than a prison sentence longer than 96 months.

11   **C.    Providing Training, Medical Care or Other Treatment.**

12   "The underlying purposes of sentencing include not only punishment and deterrence, but also
13   the provision of treatment to a defendant in need of it."  *United States v. Bad Marriage*, 392 F.3d
14   1103, 1114 (9th Cir. 2004) (citing 18 U.S.C. § 3553(a)(2)(D)).  Congress has cautioned courts to
15   recognize that "imprisonment is not an appropriate means of promoting correction and
16   rehabilitation."  18 U.S.C. § 3582(a).  Indeed, the Supreme Court has explained a district court cannot
17   increase the length of a sentence in order to provide a defendant with rehabilitative services, and a
18   court determining the length of a prison sentence "should consider the specified rationales of
19   punishment *except for* rehabilitation, which it should acknowledge as an unsuitable justification for a
20   prison term."  *Tapia*, 564 U.S. at 327 (emphasis in original).

21   Mr. Stevenson certainly suffers from mental health difficulties, including major depression
22   and schizophrenia.  PSR ¶¶ 43-47.  Mr. Stevenson plans to participate in the treatment programs
23   available to him in the BOP, including RDAP.  But the harder and more necessary treatment for Mr.
24   Stevenson will come when he is out of custody.  That is why "Congress intended supervised release
25   to assist individuals in their transition to community life. Supervised release fulfills rehabilitative
26   ends, distinct from those served by incarceration."  *United States v. Johnson*, 529 U.S. 53, 59 (2000)
27   (citing 18 U.S.C. § 3553(a)(2)(D)).  Thus, placing Mr. Stevenson onto supervised release after 96
28   months—and into mental health counseling and drug treatment—will be more effective at ensuring

DEFENDANT'S SENTENCING MEMORANDUM
*STEVENSON*, CR 18-187-JSW

he is not a danger to the public than a lengthy prison sentence.

### D.     The Guidelines Sentencing Range and Sentencing Commission's Policy Statements.

The parties agree on the applicable Guideline range.  Under U.S.S.G. § 2K2.4(b), the guideline sentence is the minimum term of imprisonment required by statute, which is 84 months.  PSR ¶ 16.  The Court does not apply any adjustments under Chapter 3 or 4 of the Sentencing Guidelines.  *See* U.S.S.G. 2K2.4(b).  Mr. Stevenson is in criminal history category II.  PSR ¶ 19.  The advisory Guideline sentence is thus 84 months.

### E.     Avoiding Unwarranted Sentencing Disparities.

While the Court must avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, the Ninth Circuit has explained sentencing courts must also "avoid 'unwarranted similarities among [defendants] who were not similarly situated.'" *Amezcua-Vasquez*, 567 F.3d at 1058 (quoting *Gall*, 552 U.S. at 55 (emphasis and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

The joint sentencing proposal of 96 months adequately captures all of the aggravating and mitigating circumstances in this case.  It also ensures Mr. Stevenson is not unfairly equated with an individual convicted under § 924(c) who did not plead guilty and held the government to its burden at trial, or an individual who brought a loaded firearm to a bank robbery.  *See* U.S.S.G. § 2K2.4(b) (directing Court to not apply any Chapter 3 adjustments, including acceptance of responsibility under U.S.S.G. § 3E1.1).

### F.     Providing Restitution.

To date, there have been no claims for restitution.  All money taken from the bank was recovered on the day of Mr. Stevenson's arrest.  PSR ¶ 12.  If restitution requests are made in the future, then a sentence no greater than 96 months ensures Mr. Stevenson will be released with enough time to make restitution payments.  Additionally, in order to facilitate the payment of restitution, Mr. Stevenson asks this Court to exercise its discretion and waive interest on any restitution amount the Court may later impose.  *See* 18 U.S.C. § 3612(f)(3)(A) (court may waive interest if it "determines that the defendant does not have the ability to pay interest").

## **CONCLUSION**

Mr. Stevenson asks this Court to adopt the joint recommendation of the parties and sentence him to 96 months in the BOP, five years of supervised release and a $100 special assessment.

Dated:     January 21, 2020                    Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender

             /S
HANNI M. FAKHOURY
Assistant Federal Public Defender

DEFENDANT'S SENTENCING MEMORANDUM
*STEVENSON*, CR 18-187-JSW

8